Hillsborough, Oct. 7, 1947. } No. 3662.

ROSE MENARD *v.* MARGARET E. CASHMAN.

*Robert W. Upton* (by brief and orally), for the plaintiff.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the defendant.

DUNCAN, J. The defendant's motions for a nonsuit and a directed

verdict were properly denied. It appeared that the applied treads were installed by the defendant approximately four months before the accident. They were of flexible corrugated rubber composition, three thirty-seconds of an inch thick, affixed to the surface of the wooden stairs without glue or cement, by means of brass nails. Each tread was smaller than the stair, so that the stair extended eleven inches beyond the tread on either side, and approximately two and one-half inches behind the tread, between its rear edge and the riser. The brass nails which held the back of the particular tread claimed to have caused the accident were five in number, the outside nails being approximately an inch from the outer edges of the tread, and the intermediate nails being spaced at intervals of eight, ten and one-eighth, and eight inches respectively.

There was evidence that standard practice required that stair treads in semi-public buildings, such as the defendant's, cover the entire stair, so as to present a uniformly even surface. It could be found that those used by the defendant were unsuitable, both in failing to comply with this standard, and because the method of attachment was insufficient to eliminate the danger of bulging, inherent in their flexible and expansive character.

The plaintiff testified that she started to descend, holding the right hand rail, and caught her heel on the second tread down. The defendant's suggestion of physical impossibility is not impressive. Shortly after the accident, the back of the tread was found to be pulled up from the stair over a distance of three inches, between the first two nails on the right, going down. That the plaintiff should have set her left heel down within twelve to fifteen inches of the side of the stair, and behind the applied tread cannot be regarded as impossible. Persons having occasion because of youth, age, weight, or disability, to descend stairs cautiously, frequently place their feet well back on the stair. To require the defendant to anticipate such conduct does not violate concepts of reasonableness.

Upon the plaintiff's testimony it could be found that she was an invitee of the defendant's tenant. A finding that the defendant failed to exercise the requisite care for her safety was warranted by the evidence. The law is settled that it is "a landlord's obligation to keep in reasonably safe condition that portion of the premises retained in his possession and maintained or held open by him for the use of the tenant and his invitees." *Douglas* v. *Hollis*, 86 N. H. 578, 580.

In support of her motions, the defendant argues that the plaintiff could be found to be a mere licensee of the tenant, and exceptions

were taken to the denial of several requests contemplating submission to the jury of the issue of whether the plaintiff's status was that of invitee or licensee. In calling at the tenants' beauty parlor, the plaintiff sought to obtain scissors to sharpen, a business in which she was engaged with her husband. The fact that she had obtained no business upon a visit several weeks before, did not make unreasonable the expectation of greater success upon the second trip. If the evidence that she was invited to return were disbelieved, there was no evidence that her return was forbidden, or that she was given to understand there was no prospect of future business. She was at least a licensee of the tenant, and the defendant owed her the same duty of care whichever status she had.

The stairs in question afforded the sole means of access to the building, and were maintained by the defendant not only for the use of her various business and residential tenants, but also for the use of persons having lawful occasion to visit them. The plaintiff's use of the stairs was for a purpose for which they were provided. It was lawfully made with the implied permission of the tenants upon whom she called, and what is more important, upon the implied invitation of the defendant. "The owner of property on a business street cannot negligently disregard the customary actions of the public in the use of entrances leading therefrom." *Pickford* v. *Abramson*, 84 N. H. 446, 450. "The gist of the liability consists in the fact that the person injured . . . entered the premises because he was led to believe that . . . such use was . . . in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used." *Sweeny* v. *Railroad*, 10 Allen 368, 373, 374; *Hobbs* v. *Company*, 75 N. H. 73, 80. There was no dispute concerning the defendant's control of the stairs, or the purpose for which they were provided. The imposition of liability under the circumstances disclosed meets the requirements both of an obligation coextensive with the defendant's invitation (*Plummer* v. *Dill*, 156 Mass. 426, 430), and of the existence of a business interest on the part of the defendant. See, *Sandwell* v. *Elliott Hospital*, 92 N. H. 41. As the Restatement of Torts indicates, the defendant had a "business interest in the use of these facilities by any person whom his lessee might choose to admit," irrespective of whether such person was a business guest of the tenant or merely a gratuitous licensee. *Id.*, *s.* 332, *comment* h. Having by implication induced the plaintiff to enter over her premises, the defendant assumed an obligation to keep them in reasonably safe condition. *Pickford* v. *Abramson, supra.* The obligation extended

not only to invitees of the tenants, but also to their licensees. Restatement, Torts, *Id.*, s. 360; *Wool* v. *Larner*, 112 Vt. 431; *Esserman* v. *Madden*, 123 Conn. 386; *Roth* v. *Protos*, 120 N. J. L. 502, 504. In the determination of the issue of the defendant's negligence, the plaintiff's relation to the tenants was thus immaterial, it appearing that she called with their consent. The defendant's several requests for instructions suggesting a different rule were properly denied.

The evidence bearing upon the plaintiff's conduct was not such as conclusively to demonstrate lack of care on her part, and the motions for a nonsuit and a directed verdict were rightly denied. *Cartier* v. *Hoyt Shoe Corp.*, 92 N. H. 263.

The defendant's seventh and eighth requests for instructions related to the issue of the plaintiff's due care, concerning which the instructions given were adequate, though brief. The requested instructions were argumentative, unduly emphasizing a single aspect of the plaintiff's conduct, her failure to observe any defect, and were properly denied. The eleventh request would have made the defendant's liability turn upon the existence of a bulge, and embodied an inaccurate statement of the plaintiff's claim. It was properly denied. *Wemyss* v. *Company*, 86 N. H. 587, 593; *Whipple* v. *Railroad*, 90 N. H. 261, 269. So also were the twelfth and thirteenth requests, which were calculated to emphasize the defendant's evidence as to common usage (See, *Nason* v. *Company*, 92 N. H. 251, 256), and likely to distract attention from the standard of due care which the instructions given properly made the test of liability. *Bouley* v. *Company*, 90 N. H. 402; *Howe* v. *Jameson*, 91 N. H. 55. We perceive no error in the manner in which the case was submitted to the jury.

The defendant took numerous exceptions to rulings relating to evidentiary matters. She excepted to the plaintiff's testimony that in October following the accident, she found a bulge in the back of the tread on the second stair down. While not evidence that a bulge existed in June, it was competent upon the question of the tendency of the tread to bulge, and was in that respect evidence of the "condition of the stairs in June," the defendant's objection being that it was not. Additional nails were not placed in the tread until long after October. Being in the nature of experimental evidence, the testimony was admissible in the Court's discretion. *Gould* v. *Hutchins*, 73 N. H. 69; *Bailey Lumber Company* v. *Railroad*, 78 N. H. 94. The defendant requested no limitation upon its use, and can take nothing by her exception. *Smith* v. *Railroad*, 87 N. H. 246, 254; *Belanger* v. *Berubé*, 88 N. H. 191, 193.

The exception to the admission of a bill to the plaintiff from her attending physician is without merit. The defendant concedes its admissibility if the plaintiff, rather than her husband, incurred the liability. See, *Parsons* v. *McLane*, 64 N. H. 478. The evidence that she did was uncontradicted.

The defendant proceeded to trial upon the general issue raised by the plaintiff's claim that the defendant's negligence caused her to fall while descending the stairs. In this situation expert testimony concerning the suitability of the applied treads, to the reception of which the defendant several times excepted, was properly received. At no time was any motion for a specification made (See, *Brown* v. *Barnard*, 91 N. H. 58), and in so far as the defendant's objections to the evidence were grounded upon "surprise," a finding of unfair surprise was not required. See, Wig. Ev., *s.* 443, *pp.* 429, 430; *s.* 1845, *p.* 372. If as the defendant now asserts, the objections were equivalent to a motion for a specification, it does not appear that they were so understood by the Court, or how a specification in the midst of trial would have accomplished any purpose not served by reception of the evidence. *Cf.* Wig. Ev., *Id.*, *s.* 1848.

In connection with his testimony that approved practice required that applied treads present a uniform surface, one of the plaintiff's experts testified that "good practice would dictate extending them the entire width of the stairway," as well as from nosing to riser. The denial of the defendant's subsequent motion to strike out the answer as to width was not error. The answer was no more than an elaboration of the witness' assertion that a uniform surface was required, and no claim was made that exposure of the side of the stair contributed to the accident. If the defendant desired cautionary instructions, she should have requested them.

Defendant's counsel inquired of one of the proprietors of the beauty parlor whether any customers ever complained to her of any defects in the stairs. The evidence was offered "on the question of the safety of the stairs" and excluded subject to exception. The witness was permitted to testify both that she never saw anyone fall on the stairs and "without reference to what (she) may have heard" that she never "knew of anyone to fall." In support of her exception the defendant argues that evidence of absence of complaints was held to be competent by the former opinion in the case, and could not properly have been excluded as remote. The defendant's argument misconstrues the former opinion. It was there stated that "evidence that persons had descended the stairs without falling was admissible

. . . as tending to show that the stairway was in suitable condition." *Menard* v. *Cashman, supra,* 274. Whether the testimony that "nobody had ever complained . . . of any defect" was considered to be admissible as having the same tendency does not appear. It was expressly held inadmissible on the issue of the defendant's knowledge because the witness was not the defendant's agent.

To show the "safety of the stairs," the probative effect of the excluded evidence would rest in the implication that because patrons did not complain of any defects to the tenant, they thereby indicated that they encountered none, and therefore there were none. Coming from a witness having no personal knowledge of what such users did find, the testimony would have the characteristics of hearsay (See, *Howe* v. *Jameson,* 91 N. H. 55, 57), and the opponent would be deprived of the right to cross-examine as to what conditions were in fact encountered. The witness was permitted to testify concerning such use of the stairs by patrons as came within her own observation. If the excluded testimony was not hearsay, and therefore inadmissible (*Altkrug* v. *Whitman Co., Inc.,* 185 N. Y., App. Div. 744, 748; *United States* v. *11¼ Dozen Packages, etc.,* 40 Fed. Supp. 208, 211), it was at most only evidence of inconclusive silence, and properly excluded in the exercise of the Court's discretion. See, *Daley* v. *Company,* 81 N. H. 502, 506.

The exceptions to the argument of plaintiff's counsel present no serious questions. The arguments drew legitimate inferences from the evidence and did not misstate it. If the statement that the nails were "put in ten inches apart" did not describe the average distance, said to be eight or nine inches, it was supported by evidence that some nails were over ten inches apart, and since made in pointing out the possibility that a bulge could occur, was not such a misstatement as to constitute reversible error. It was not likely to mislead because of following references to "the nails, eight or ten inches apart."

There remains for consideration the defendant's contention that the verdict should have been set aside because excessive. The plaintiff suffered a comminuted fracture of the wrist with permanent deformity, and limitation of motion, persisting at the time of the trial. Headaches resulted from a blow on the forehead. She also wrenched her left leg, and her back between the shoulders, and testified that the back injury continued to bother her. Her loss of wages attributable to the accident could be found to exceed $3,000. Her medical expense was $90. She was entitled to damages for pain and suffering, which could be found to have continued in some measure for over four years.

Under the circumstances it cannot be said that the verdict was unwarranted. The defendant suggests that it included damages for injuries suffered in later accidents for which the defendant was not responsible. So far as the record discloses, the argument is founded solely upon the amount of the verdict. The finding of the Trial Court that there was no persuasive evidence of mistake is not questioned, and it is not apparent that the jury acted improperly. *Wisutskie* v. *Malouin*, 88 N. H. 242; *Leavitt* v. *Bacon*, 89 N. H. 383, 388, 389. The defendant's exceptions are overruled.

*Judgment on the verdict.*

All concurred.