**John P. WRIGHT, Plaintiff, Appellant,**

v.

**Rose MOFFITT, t/a Fairways Inn, Defendant, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 17, 1981.

Decided Nov. 3, 1981.

John Williams (argued), of Prickett, Jones, Elliott, Kristol & Schnee, Dover, for plaintiff-appellant.

I. Barry Guerke (argued), of Parkowski, Noble & Guerke, Dover, for defendant-appellee.

Before DUFFY, McNEILLY and QUILLEN, JJ.

DUFFY, Justice:

The issue on appeal is whether a "Dram Shop"[1] patron who purchases alcoholic liquor from a tavern operator has a cause of action against the vendor for personal injuries resulting from the patron's voluntary intoxication.

We conclude that such a cause of action does not exist in this State under either the common law or present Statutes and, therefore, the judgment of the Superior Court dismissing the complaint must be affirmed.

I

In testing a motion to dismiss a complaint for failure to state a claim for relief, all well-pleaded allegations are, of course taken as true.[2]  *Spence v. Funk*, Del.Supr., 396 A.2d 967, 968 (1978).  Applying that principle, we look to the complaint for the facts and it alleges as follows:

John P. Wright (plaintiff) was a patron at a tavern operated by Rose Moffitt trading as the Fairways Inn (defendant), which is located on U. S. Route 13.  Wright had entered the tavern at approximately 5:30 p. m. and was served alcoholic beverages by its employees until he left at about 11:30 p. m.  Defendant's employees had continued to serve Wright alcoholic beverages even

---

1. A Dram Shop is "a place where spiritous liquors are sold by the dram or drink; a bar-room."  *Webster's International Dictionary* 782 (2 Ed. 1951).

2. Although the factual allegations of the complaint are accepted as true for present purposes, that does not apply to proximate cause which is a critical issue in a claim based on Dram Shop negligence.  *Moore v. Bunk*, Conn. Supr., 228 A.2d 510, 513 (1967).  In a narrow sense, the issue is whether the alleged negligence of the tavern operator can be, as a matter of law, a proximate cause of a plaintiff's injury.

though he was apparently intoxicated. Shortly after leaving the Inn and while attempting to cross Route 13 on foot, Wright sustained serious and permanent bodily injury when he was struck by an automobile operated by one Stanley Granger.

On the basis of these facts, Wright has sued defendant for the injuries that he sustained when struck by Granger's vehicle. The Superior Court granted defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, and Wright then docketed this appeal.

## II

Wright argues that Delaware should enforce his claim against the tavern operator on both common law and statutory principles, which we will consider in that order.

## A.

For many years, so-called Dram Shop liability has been the subject of litigation in other jurisdictions. Speaking generally, the common law did not enforce a cause of action against a tavern owner for personal injury to a patron (or a third person) resulting from or "caused" by the voluntary intoxication of the patron. The Maryland Court of Appeals has stated the rule, as follows:

"Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, as such, for 'causing' intoxication of the person whose negligent or wilful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no rela-

tion of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor."

*State v. Hatfield,* Md.Ct.App., 78 A.2d 754, 756 (1951).

Using similar reasoning (that is, consumption of the alcohol and not the sale thereof is the proximate cause of any resulting injuries), a majority of jurisdictions has determined that a patron who is injured as a result of his voluntary intoxication does not have a cause of action against the tavern operator at common law. *Nolan v. Morelli,* 154 Conn. 432, 226 A.2d 383, 386 (1967); *Noonan v. Galick,* 19 Conn.Sup. 308, 112 A.2d 892 (1955); *Miller v. City of Portland,* 288 Or. 271, 604 P.2d 1261 (1980); *Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178, 182 (1979); *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566 (1970); 45 *Am.Jur.2d* Intoxicating Liquors § 553; *Anno:* "Liability of Persons Furnishing Intoxicating Liquor," etc. 98 *A.L.R.3d* 1230; *Anno:* "Common Law Right of Action," etc. 97 *A.L.R.3d* 528. But see 48A *C.J.S.,* Intoxicating Liquors § 434b.

Wright argues, however, that this Court should create a common law action (against defendant tavern owner) as part of our historic function of developing the law in light of the circumstances in which an issue arises. *Martin v. Ryder Truck Rental, Inc.,* Del.Supr., 353 A.2d 581, 588 (1976). Certainly this Court does that as part of its judicial responsibility. But, in this case, the argument is not persuasive because, historically, our Courts have recognized that the General Assembly has the power and responsibility to license and regulate the use and sale of alcoholic beverages for the benefit of the public.[3] *State v. Delaware Saen-*

---

3. It should also be said, that if a cause of action were recognized under our common law, a patron's chances of recovery might be burdened by contributory negligence and assumption of risk principles. In Delaware, failure to exercise reasonable care in light of a known risk or danger, which ultimately causes injury, makes a person so failing guilty of contributory negligence. *Franklin v. Salminen,* Del.Supr., 222 A.2d 261, 262 (1966). Similarly, an assumption-of-risk defense is available against a plain-

tiff who, "knows of the existence of a risk, appreciates the danger of it and nevertheless does not avoid it ...." *Id.* And, as stated by the Court of General Sessions many years ago,

"The effect of drunkenness upon the mind and upon men's actions when under the full influence of liquor are facts known to everyone, and it is as much the duty of men to abstain from placing themselves in a condition from which danger to others is to be apprehended as it is to abstain from firing

*gerbund,* Del.Ct.Gen.Sess., 91 A. 290, 292, *aff'd,* Del.Supr., 95 A. 1078 (1915). And since repeal of the Eighteenth Amendment the regulation and control of those persons engaged in the sale of alcoholic beverages has been affected by a comprehensive Alcoholic Beverage Control Act. 4 *Del.C.* § 101, etc.

In our opinion, the creation of a cause of action against one who is licensed to sell alcoholic beverages, under the circumstances alleged here, involves public policy considerations which can best be considered by the General Assembly.[4] We say this, not merely because the alcoholic beverage business has been traditionally governed by the Legislature, but also because the issue has many practical implications; for example: should any such liability extend to a hotel dining room or restaurant owner (or to a social host) as well as to a "tavern" owner? should it extend to assaults or other torts by an inebriated patron? to whom should such a cause of action accrue? should there be a special rule for minors? And, inevitably, if a cause of action were recognized under any of these circumstances, a commercial dispenser of alcoholic beverages (and, probably, a social host) would be a party to every suit in which an intoxicated person is alleged to have committed a tortious act.

We do not suggest that Dram Shop liability, or a responsibility akin to it, is undesir-

able public policy or that adoption in Delaware would lend to illogical or unfair results. On the contrary, we think that a law which imposes some such responsibility on a licensee who wilfully or carelessly serves alcohol to an intoxicated patron has much to commend it. But, in our view, the General Assembly is in a far better position than this Court to gather the empirical data and to make the fact finding necessary to determine what the public policy should be as to a Dram Shop law, and the scope of any such law. Compare *Cline v. Prowler Industries of Md., Inc.,* Del.Supr., 418 A.2d 968, 974 (1980); *Biloon's Elec. Serv. v. City of Wilmington,* Del.Supr., 417 A.2d 371, 372 (1980); *Alfree v. Alfree,* Del.Supr., 410 A.2d 161, 163 (1979).

**B.**

To avoid the consequence of the common law rule, some states have enacted a "Civil Damage" Act or a "Dram Shop" Act, which creates a separate and distinct cause of action authorizing remedies not otherwise available. See, for example, *Sampson v. W. F. Enterprises, Inc.,* Mo.App., 611 S.W.2d 333, 335 (1980). Generally speaking, under a Dram Shop Act a liquor vendor is strictly liable for personal injury or property damage caused by an intoxicated person to whom the vendor had sold alcoholic beverages.[5]

---

into a crowd or doing any other act likely to be attended with dangerous or fatal consequences."
*State v. Kavanaugh,* Del.Ct.Gen.Sess., 53 A. 335, 336 (1902). Compare the current Statute, 11 *Del.C.* § 421, which states:
"The fact that a criminal act was committed while the person committing such act was in a state of intoxication, or was committed because of such intoxication, is no defense to any criminal charge if the intoxication was voluntary."

4. We are aware that courts in some states have ruled that a remedy based on Dram Shop principles is available without a statute. See, for example, *Vesely v. Sager,* Cal.Supr., 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151, 153 (1971); *Marusa v. District of Columbia,* D.C.App., 484 F.2d 828, 835 (1973); *Ono v. Applegate,* Hawaii Supr., 612 P.2d 533, 537 (1980); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959). See

also *Connelly v. Ziegler,* 251 Pa.Super. 521, 380 A.2d 902 (1977).

5. See, for example, the Connecticut Dram Shop Act:
"If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. Such notice shall specify the time, the date and the person to

Delaware does not have such a statute, but Wright contends that 4 *Del.C.* §§ 711 and 713 state a standard of care, the violation of which constitutes negligence *per se* by one who sells alcoholic liquor. And, he continues, those Statutes create a private right of action under the circumstances alleged in the complaint.

The Statutes, which are part of the Alcoholic Beverage Control Act, provide, in pertinent part, as follows:

§ 711:

"Any licensee, or employee of a licensee, or person in charge of a licensed premises shall refuse to sell or serve alcoholic liquors to any individual if such individual is intoxicated or appears to be intoxicated. Such licensee, employee of a licensee or person in charge of the licensed premises shall not be liable to any individual for damages claimed to arise from the refusal to sell alcoholic liquors if such refusal is based upon the provisions of this section."

§ 713:

"(a) No person shall sell any alcoholic liquor to any:

\*　　\*　　\*　　\*　　\*　　\*

(4) Individual who habitually drinks alcoholic liquor to excess, or to whom the Commission has, after investigation, decided to prohibit the sale of such liquor because of an appeal to the Commission by the husband, wife, father, mother, brother, sister, employer or other person depending upon, employing or in charge of such individual, or by the mayor or other competent representative of any city, town, or other incorporated place; the interdiction in such case shall last until removed by the Commission.

(b) No sale made to any person mentioned in this section, other than an individual who has not reached the age of 20 years, shall constitute a misdemeanor un-

whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of

less the Commission has informed the seller, by registered letter, that it is forbidden to sell to such person or unless the fact is otherwise known to the seller."

■ It is settled Delaware law that the violation of a statute enacted for the safety of others is negligence in law or negligence *per se*. *Sammons v. Ridgeway*, Del.Supr., 293 A.2d 547, 549 (1972); *Nance v. Rees*, Del.Supr., 161 A.2d 795 (1960). To be actionable, however, there must be a causal connection between such a statutory violation and the injury alleged. *Wealth v. Renai*, Del.Super., 114 A.2d 809, 811 (1954). And a plaintiff who invokes a statute must be "a member of the class of persons for whose protection or benefit the statute was enacted." *Ford v. JA-Sin*, Del.Super., 420 A.2d 184, 186 (1980). Applying those principles, we conclude that Wright does not have a right of recovery against defendant for violation of § 711 or § 713.

While the requisite causal connection might not be shown in this case, it is unnecessary to decide that issue. We say this because we are persuaded that Wright was not within the protected class of persons to which the Statutes were directed. And that is fatal to his claim.

We recognize that some jurisdictions have based a civil liability on the violation of a similarly worded criminal statute. See, *e. g.*, *Soronen v. Olde Milford Inn, Inc.*, 46 N.J. 582, 218 A.2d 630, 633 (1966); *Connelly v. Zeigler*, supra. But, in our view, the legislative purpose of both §§ 711 and 713 is to protect the public in general and to prevent a breach of the public peace, not to protect one who has drunk alcoholic beverages from the consequences of his own intoxication. Other jurisdictions share that view, see, for example, *Nolan v. Morelli*, supra, 226 A.2d at 389 (1967); *Cunningham v. Brown*, 22 Ill.2d 23, 174 N.E.2d 153 (1961); but we base our conclusion not on those cases but on the legislative history of §§ 711 and 713.

this section shall be brought but within one year from the date of the act or omission complained of."
Conn.Gen.Stat. § 30–102 (1977).

Section 711 of the current Control Act is substantially the same as the prior Statute which was in the 1953 Code; that provided as follows:

"Any person in charge of a hotel, restaurant, club or gathering of persons shall refuse to sell or to serve alcoholic liquor to any individual if such individual is intoxicated or appears to be. The person in charge shall not be liable to such individual for damages claimed to arise from the refusal to sell alcoholic liquor." [6]

And § 713(a)(4) of the present Code is identical to § 715(a)(6) of the 1953 Code, which provided as follows:

"No person shall sell any alcoholic liquor to any—

\*  \*  \*  \*  \*  \*

Individual who habitually drinks alcoholic liquor to excess, or to whom the Commission has, after investigation, decided to prohibit the sale of such liquor because of an appeal to the Commission by the husband, wife, father, mother, brother, sister, employer or other person depending upon, employing or in charge of such individual, or by the mayor or other competent representative of any city, town, or other incorporated place; the interdiction in such case shall last until removed by the Commission." [7]

The 1953 Code, at § 716, provided a civil cause of action for violation of § 715(a)(6). Thus:

"In addition to the penalties imposed by this title, any person who, being the holder of a license for the sale of alcoholic liquor, knowingly sells alcoholic liquor to any individual to whom sale is forbidden by subsection (a)(6) of section 715 of this title, after having been so notified by the Commission, *shall be liable to civil action and may, in addition to the penalty in this title provided for such offense, be sentenced to pay to the person appealing a sum of not more than $500 by way of exemplary damages.*" (Emphasis added.)

And here we note, and emphasize, that when § 715(a)(6) was enacted, in 1933, see 38 *Del.Laws* ch. 18, § 51, a civil or private remedy was not provided for violation of § 711. In other words, the General Assembly created a civil claim for a class of persons seeking a remedy for violation of § 715(a)(6) by serving alcoholic liquor to one "who habitually drinks alcoholic liquor to excess" and that remedy continued to be available until June 25, 1973. But such remedy was not then or ever made available for a violation of § 711. The only reasonable conclusion is that the General Assembly did not intend to create one.

Then, in 1973, the civil remedy provision of § 716 was expressly repealed by 59 *Del. Laws* ch. 107, § 56.[8] The consequence is that even the limited civil remedy made available by one of the Statutes in issue here no longer exists.

Although our Liquor Control Act has never created a civil cause of action against a liquor vendor for serving alcohol to one who is obviously intoxicated and subsequently injures himself, § 6201 of the 1935 Revised Code of Delaware permitted a suit for damages which could be brought by the spouse or children of a person who was injured as a result of the sale of alcohol to one of known intemperate habits; thus:

"*Civil Damages; Suits For; At Whose Instance; Verdict For Exemplary Damages To Work Revocation Of License:—* Whenever it can be shown by proof that any injury has been caused to the person of any one of known intemperate habits, in consequence of the sale to him or her of intoxicating liquor, the vendor shall be liable to his or her wife, husband, child or children (if there be more than one) in an action upon the case, in which exemplary (but not excessive) as well as actual damages may be given by the jury. The rendition of a verdict for exemplary dam-

---

**6.** Section 711 in its present form was enacted on June 25, 1973, 59 *Del. Laws* ch. 107, § 53.

**7.** See 59 *Del.Laws* ch. 107, § 55, which redesignated the number of the paragraph.

**8.** That Statute states that § 716 is amended "by striking said section in its entirety."

ages shall work a revocation of the vendor's license; and all sales afterwards made by him shall be deemed and taken to be without license."

Significantly, that Statute was also repealed on or before enactment of the 1953 Code. See 1 *Del.C.*, 1953, § 101.

It is clear to us from the civil liability provisions which have been enacted that several General Assemblies have been aware that a civil cause of action can be created for violation of the pertinent provisions of the Alcoholic Beverage Control Act; enactment on a limited basis (to § 715(a)(6) of the 1953 Code and to § 6201 of the 1935 Revised Code) strongly suggests an intention to limit such a remedy to those specific Sections. Then, the elimination of even those remedies for violations of the Act implies an intention that the criminal penalties and the administrative remedies were intended to be exclusive. Specifically, we conclude that §§ 711 and 713 do not create a legislative standard of care that may be used by a patron as the basis of recovery against a liquor license. Our conclusion is consistent with the usual construction given to such statutes. 48A *C.J.S.*, supra at § 434a.

In *Taylor v. Ruiz*, Del.Super., 394 A.2d 765 (1978), the Superior Court held that § 711 (and, perhaps, § 713) may be the basis of a negligence action against a tavern owner brought by a third person who is injured by an intoxicated patron. That case is more persuasive on its facts because the plaintiff was not an intoxicated patron but an innocent third person. The Trial Court, however, did not analyze the statutory history of § 711 nor trace the legislative acts relating to private causes of action under the Liquor Control Act. We have done so and, for the reasons stated herein, we do not agree with the Superior Court's construction of § 711.[9]

\*     \*     \*

Affirmed.

9. We note that about four months before *Taylor* was decided, a different Judge of the Superior Court (in an unreported opinion, *Rankins v. Gawronski*, No. 1337 C. A. 1976) had held that a patron who was injured in a tavern does not have a civil cause of action, under § 711 or § 713, against the *tavern operator based on the* service of alcoholic beverages to a different patron who was intoxicated at the time.